

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MYLA NAUMAN, JANE ROLLER, and MICHAEL LOUGHERY, <br><br> Plaintiffs, <br><br> v. <br><br> ABBOTT LABORATORIES, and HOSPIRA, INC., <br><br> Defendants. | No. 04 C 7199 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Myla Nauman, Jane Roller, and Michael Loughery, on behalf of themselves and all others similarly situated, have brought a three count putative class action complaint against defendants Abbott Laboratories and Hospira, Inc., alleging violations of § 510 of ERISA, 29 U.S.C. § 1140. Count I, against Abbott, plaintiffs' former employer, alleges that Abbott terminated plaintiffs' employment by "spinning-off" the division for which they worked, with the specific intent to interfere with plaintiffs' attainment or receipt of benefits under the various Abbott Benefit Plans. Count II, also brought against Abbott, alleges that Abbott adopted a no-hire policy under which it refused to rehire employees terminated as part of the spin-off for a period of two years, effectively eliminating any rights plaintiffs could have retained under the Abbott Benefit Plans. Count III, directed against Hospira, the new company spun-off from Abbott, alleges that Hospira by agreement with Abbott adopted a no-hire policy under which it refused to hire any employee who chose to first retire from Abbott and collect retirement benefits prior to seeking employment with Hospira. Plaintiffs have moved pursuant to Fed. R. Civ. P. 23

to proceed as a class action. They seek certification of a single proposed class for all three counts:

> All employees of Abbott who were participants in the Abbott Benefit Plans whose employment with Abbott was terminated between August 22, 2003, and April 30, 2004, as a result of the spin-off of the HPD/creation of Hospira announced by Abbott on August 22, 2003.

Abbott has agreed that class treatment is appropriate for Count I, although it argues that the proposed class is overbroad. Both Abbott and Hospira object to certification for Count II and III, albeit for different reasons. For the reasons discussed below, plaintiffs' motion for certification is granted as to Counts I and II and granted in part as to Count III.

## DISCUSSION[1]

Fed. R. Civ. P. 23, which governs class actions, requires a two-step analysis to determine if class certification is appropriate. First, plaintiffs must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. These elements are prerequisites to certification, and failure to meet any one of them precludes certification of a class. Second, the action must also satisfy one of the conditions of Rule 23(b). Joncek v. Local 14 Int. Teamsters Health and Welfare Fund, 1999 WL 755051 at *2 (N.D. Ill. 1999) (and cases cited therein).

**Count I**

In Count I, plaintiffs allege that Abbott terminated their employment by spinning-off HPD, the division in which they worked, into a new company called Hospira, solely to avoid plaintiffs' attainment or receipt of benefits under the various Abbott Benefit Plans. As noted,

---

[1] A description of plaintiffs' claims can be found in the court's denial of defendants' motion to dismiss. Nauman v. Abbott Laboratories, 2005 WL 1139480 (N.D. Ill. 2005).

Abbott does not dispute that plaintiffs can satisfy the requirements for class certification, but objects to the proposed definition as overbroad. Specifically, Abbott raises four objections to the class: (1) it improperly includes all employees whose employment was terminated any time "between August 22, 2003, and April 30, 2004 in connection with the spin-off;" (2) the definition includes the word "terminated" and thus assumes plaintiffs were terminated from employment with Abbott; (3) The definition includes all "Abbott Benefit Plans;" and (4) The class definition includes Hospira employees who were not impacted by the post spin-off amendment to the Hospira plans, including Hospira employees who left the company before the plan amendment. None of these objections has any merit.

First, Abbott argues that the class definition should include only those employees who were "terminated" on April 30, 2005, the effective date of the spin-off, because anyone who was terminated between August 22, 2003, the date the spin-off was announced and the actual spin-off date was terminated for reasons that had nothing to do with the spin-off. Anyone who was terminated for reasons unrelated to the spin-off, however, is not a member of the proposed class, because the class definition is limited to employees terminated as "a result of the spin-off." Under plaintiffs' theory of the case, only those who were terminated from employment with Abbott as a result of Abbott's allegedly illegal decision to eliminate the HPD division should be a member of the class. Additionally, contrary to Abbott's assertion, the complaint is not limited to the date of the spin-off, but rather uses the phrase "during the spinoff."

Next, Abbott objects to the use of the word "terminated," arguing that none of the Abbott employees were terminated or discharged. The court has already twice rejected this argument. See Nauman, 2005 WL 113948 at *3. Whatever the legal implication of the spin-off may be,

3

there can be no question that plaintiffs' and the other proposed class members' employment with Abbott was terminated.

Third, Abbott argues that the proposed class should be limited to participants in the Pension Benefits, Retiree Medical Benefits and Cash Profit Sharing Plans only. Under plaintiffs' theory, however, every employee terminated was no longer a member of any of the Abbott Benefits Plans. If plaintiffs are correct and their employment was terminated illegally, they seek reinstatement into all the Abbott Benefit Plans. Therefore, Abbott's objection is without merit.

Finally, Abbott argues that the proposed definition is overbroad because it includes Hospira employees who were not impacted by Hospira's decision to amend its benefit plans. This argument focuses on Abbott's theory of the case, that the only possible injury results from Hospira's decision to change plan benefits. Abbott's argument ignores plaintiffs' theory that the spin-off itself was illegal and that everyone who was terminated from employment with Abbott as a result of the spin-off was illegally terminated from the Abbott Benefit Plans. If plaintiffs are correct, it does not matter if or why any of those employees ultimately left Hospira. Accordingly, the court rejects Abbott's objections to the proposed class definition and grants plaintiffs' motion to certify the class under Count I.

**Count II**

In Count II, plaintiffs allege that as part of the spin-off Abbott implemented a no-hire policy pursuant to which it agreed that, without the express written consent of Hospira, Abbott would not, during a set period of time, employ any person who was "transferred" to Hospira or who rejected employment with Hospira. Abbott describes plaintiffs' theory as alleging that "some portion" of Hospira employees were harmed by the no-hire policy because absent the

4

policy they "would have" applied for and received employment at Abbott after the spin-off. Abbott then argues that the situation is indistinguishable from a line of cases declining to certify classes when individuals allegedly were "deterred" from applying for a job by a policy precluding their employment. See, Sondel v. Northwest Airlines, Inc., 1993 WL 559031 at *4 (D. Minn. 1993); Harris v. General Dev. Corp., 127 F.R.D. 655, 659 (N.D. Ill. 1989). Abbott argues that the proposed class is too speculative because there is no certainty that each plaintiff would have wanted to return to Abbott or that Abbott could have absorbed all those who did. The court rejects this argument as well.

The employment cases on which Abbott relies, Sondel and Harris, are inapposite. In each, the plaintiffs attempted to certify a class of persons who were "deterred" from applying for a job because of certain requirements. For example, in Sondel, there was a height restriction for flight attendants precluding individuals under 5' 2" from applying. Rather than attempting to represent applicants who were rejected based on the height restriction, the plaintiffs sought to represent anyone who "would have" applied but for the height restriction. In Harris, the court rejected class certification for minorities allegedly discouraged from applying for a job at the defendant company. In each case the proposed class was too imprecise and speculative.

In the instant case, however, the number of persons in the proposed class is determinate. Each Abbott employee who was terminated as a result of the spin-off was subject to the no-hire restriction. Therefore, the universe of proposed class members is finite as opposed to the potentially infinite and unknown number of plaintiffs in Sondel and Harris. Ultimately, however, Abbott's argument is that plaintiffs' claims in Count II are not typical of the claims of the proposed class members. Yet, typicality is satisfied if a plaintiff's claim arises from the same

5

event, practice, or course of conduct that gives rise to the claims of other class members, and the claims are based on the same legal theory. Keele v. Wexler, 149 F.3d 589, 595 (7th Cir. 1998). Because Abbott applied the no-hire policy to all employees terminated by the spin-off, typicality is present. Accordingly, the court concludes that plaintiffs have satisfied their burden under Rule 23(a) to certify a class under Count II.

Abbott also argues that if certification is proper for Count II, the class should be certified under Rule 23(b)(2) because it seeks injunctive relief. Plaintiffs apparently agree, because they do not respond to Abbott's argument. Accordingly, the Count II class will be certified under Rule 23(b)(2).

**Count III**

In Count III, plaintiffs allege that as part of the spin-off Hospira agreed to refuse to hire any terminated HPD employee who "retired" pursuant to the Abbott Benefit Plans after the spin-off was announced. The count alleges that "specifically, Hospira adopted the no-hire policy in order to prevent terminated HPD employees who were retirement-eligible on the date of the spin-off but who wished to work for Hospira from applying for and receiving retirement benefits under the Abbott Benefit Plans, including the Abbott Pension Plan."

Hospira argues that plaintiffs cannot establish typicality because only plaintiff Loughery was retirement-eligible on the date of the spin-off, while plaintiffs Nauman and Roller were not. Plaintiffs respond that Count III is not limited to employees to who were retirement-eligible and that Hospira seeks to turn a single no-hire agreement into two separate no-hire agreements, one by Abbott and one by Hospira.

It is true, as plaintiffs argue, that there is only one "no-hire agreement" in question. That provision is paragraph 2.4 of the Employee Benefits Agreement between Abbott and Hospira, entitled "Restrictions on Employment," and which prevents Hospira during the period in question from hiring, without Abbott's express written consent, any person other than a "transferred employee," who was an employee of Abbott and whose employment with Abbott terminated any time after August 22, 2003, and before the last day of the period. In that same paragraph, for the same period of time, Abbott agreed not to hire, without Hospira's written consent, any transferred employee or any other person who became an Hospira employee during the period. Plaintiffs are also correct that under the Abbott end of the provision, Hospira has an active, ongoing role in determining whether one of its employees may return to Abbott.

Nonetheless, Count III is specifically directed toward Hospira's efforts to prevent HPD employees from retiring from Abbott and then working for Hospira. Paragraph 87 of the complaint specifically alleges that by announcing its no-hire policy and "refusing to consider retired HPD Employees for employment, Hospira precluded plaintiffs and other HPD employees from retiring from Abbott and receiving retirement benefits under the Abbott Benefit Plans, while at the same time being employed by Hospira."

Given the allegations of Count III, the court agrees with Hospira that plaintiffs' proposed class is too broad. The Count III class is actually a sub-class of the broader class, and should include only those employees of Abbott who were eligible to receive retirement benefits under the Abbott Benefit Plans as of the date of the spin-off. Because only plaintiff Loughery meets that definition, only he can proceed as a named plaintiff on Count III.

7

Hospira's other objections to certify a class under Count III are without merit. Loughery's claim is typical to that of the other employees who were retirement-eligible as of the spin-off, and he has enough knowledge of the case to adequately represent the class. A class representative need only have a marginal familiarity with the facts of the case and need not understand the legal theories on which the case is based. Randall v. GC Services, 181 F.R.D. 602, 604 (N.D. Ill. 1998).

Accordingly, the court concludes that class certification is appropriate for Count III. The class will be defined as:

> all employees of Abbott who were participants in the Abbott Benefit Plans and whose employment with Abbott was terminated between August 22, 2003, and April 30, 2004, as a result of the spin-off of the HPD/creation of Hospira announced by Abbott on August 22, 2003, and who were eligible for retirement under the Abbott Benefit Plans on the date of their terminations.

**CONCLUSION**

For the reasons set forth above, the court grants plaintiffs' motion for class certification under Fed. R. Civ. P. 23(b)(2) on Counts I and II. The Class is defined as:

> All employees of Abbott who were participants in the Abbott Benefit Plans whose employment with Abbott was terminated between August 22, 2003, and April 30, 2004, as a result of the spin-off of the HPD/creation of Hospira announced by Abbott on August 22, 2003.

The court grants plaintiffs' motion for certification under Count III, certifying a sub-class defined as:

> all employees of Abbott who were participants in the Abbott Benefit Plans and whose employment with Abbott was terminated between August 22, 2003, and April 30, 2004, as a result of the spin-off of the HPD/creation of Hospira announced by Abbott on August 22, 2003, and who were eligible for retirement under the Abbott Benefit Plans on the date of their terminations.

This matter is set for a report on status on January 10, 2006, at 9:00 a.m.

**ENTER:** **December 30, 2005**

*[signature]*

**Robert W. Gettleman**
**United States District Judge**