

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NAUMAN, et al., <br>     Plaintiffs, <br><br> v. <br><br> ABBOTT LABORATORIES, et al., <br>     Defendants. | ) <br> ) <br> ) <br> )   Case No. 04 C 7199 <br> ) <br> )   Judge Robert W. Gettleman <br> )   Magistrate Judge Geraldine Soat Brown <br> ) <br> ) |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, Magistrate Judge

This case is before the court on Plaintiffs' Motion to Compel. [Dkt 118.] For the reasons set out below, the motion is granted in part and denied in part, as set out below.

## BACKGROUND

This is a class action brought by former employees of defendant Abbott Laboratories ("Abbott") who claim that Abbott's decision to "spin off" its Hospital Products Division ("HPD") in which they worked into a new company, defendant Hospira, Inc. ("Hospira"), violated § 510 of ERISA, 29 U.S.C. § 1140. [Dkt 1.] Further background concerning Plaintiffs' claims is found in the opinions by District Judge Gettleman denying the defendants' motions to dismiss the complaint (Op. & Order, April 27, 2005 [dkt 44]), and certifying a plaintiff class ("Plaintiffs") (Op. & Order, Dec. 30, 2005 [dkt 101]). Plaintiffs' present motion complains of a number of actions by Abbott to resist Plaintiffs' discovery, but a major dispute is about the scope of discovery.

1

## SCOPE OF DISCOVERY

Discovery must be "relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). However, the scope of relevant discovery is not limited to evidence admissible at trial, but extends to "discovery [that] appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Plaintiffs allege that Abbott spun off Hospira, and that Abbott and Hospira adopted "no-hire" policies, in order to avoid benefit costs Abbott would incur if Plaintiffs retired from Abbott and became eligible for retirement benefits that had been promised to them. (Op. & Order, April 27, 2005 at 1-2.) To succeed on their claims under § 510, "'plaintiffs must establish more than a loss of benefits; they must demonstrate that their employers terminated them with the specific intent of preventing or retaliating for the use of benefits.'" (*Id.* at 5, quoting *Lindemann v. Mobile Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998). Additionally,

> as applied to sale or closure of an entire unit, the plaintiffs can satisfy § 510 only by showing that some ERISA-related characteristic special to the unit (such as its having a clearly above-average proportion of employees with pension rights about to vest) was essential to the firm's selecting the unit for closure or sale.

*Andes v. Ford Motor Co*, 70 F.3d 1332, 1338 (D.C. Cir. 1995). Thus, the intention of those who made the decisions at issue is part of Plaintiffs' case, and the scope of discovery extends to information that might reasonably lead to admissible evidence about that intention, including the reasons for selecting HPD as the unit to be spun off.

Plaintiffs argue that they are entitled to information revealing Abbott's deliberations before it made its decision. (Pls.' Mot. at 2.) Plaintiffs want to know:

> [D]uring the two-year period leading up to the decision to spin-off HPD, did Abbott hold executive-level meetings to discuss ways it could eliminate future benefit costs?

2

> Did Abbott compare its divisions to determine which was most costly for purposes of providing employment benefits? Did Abbott consider other spin-off targets before finalizing its decision to spin off HPD? Did Abbott perform analyses on other business groups or divisions regarding factors like the age of employees, the number of employees nearing retirement age, the costs of benefits, etc.?

(Pls.' Mot. at 2.)

Abbott states that it will produce documents about the HPD spin off and the reason for it, and documents, if any exist, from June 2001 to August 2003, which reflect that Abbott contemplated any other transactions involving HPD. (Abbott's Opp'n at 2, 3.) [Dkt 128.] Abbott also states that the earliest reference it has found to a discussion of a possible spin off of HPD dates from May 2003, in documents prepared by Abbott's financial advisor comparing the HPD spin off to six other proposed transactions (three proposed divestitures and three proposed acquisitions). (*Id.* at 2.) However, Abbott objects to Plaintiffs' efforts to take discovery relating to other transactions Abbott considered from June 2001 to the present to close, sell or spin off any business unit in addition to, or perhaps in lieu of, spinning off HPD. (*Id.* at 1.) Abbott argues that such discovery would involve as many as 20 or more separate transactions, in addition to the six discussed in May 2003, and that Plaintiffs are merely speculating that any other proposed transaction figured in the decision about HPD. (*Id.* at 1-2.) At oral argument on the motion, Abbott's counsel stated that documents comparing HPD to the six alternative transactions have been or will be produced, but other documents relating to those proposed transactions, such as analyses of the workforce or employees' pensions, have not been produced.

The court agrees that Plaintiffs are entitled to more than Abbott has agreed to provide, but not the entire breadth Plaintiffs seek. Plaintiffs' questions quoted above are within the scope of discovery on the issues in this case. Decisions about the scope of discovery in this case must

recognize that circumstantial evidence is often admissible to demonstrate intent. Abbott believes that at most discovery can extend to the six proposed transactions that were expressly compared to HPD. However, information about whether the impact of benefits figured in decisions about other proposed transactions, whether or not they were among the six proposed transactions expressly compared to the HPD spin off, may lead to discoverable evidence about the purpose of the HPD spin off. For example, Christopher Yurwitz, a consultant from Hewitt Associates retained by Abbott, testified that he performed the same type of analysis on a proposed 2002 transaction that he did on the HPD spin-off: the expense of the defined benefit pension plans as a result of the possible divestiture. (Pls.' Mot., Ex. 20 at 34-35.)[1] If similar analyses were done on any other proposed transactions, Plaintiffs will be able to question the decision makers as to whether such analyses figured in the HPD decision, even if there is no document expressly making the comparison.

Analogizing to employment discrimination cases, Abbott argues that discovery is limited to the source of the alleged discrimination, the employing unit and the same decision maker. (Abbott's Opp'n at 4-5.) However, the information Plaintiffs seek here relates to the same decision makers, albeit with respect to different decisions. The only § 510 case cited by Abbott, *Bryant v. Food Lion, Inc.*, 100 F. Supp. 2d 346 (D.S.C. 2000), is not helpful. In that case, which was not a class action and did not include a pattern and practice claim, the court refused to consider what it called "anecdotal evidence concerning employees who worked in different stores or with different supervisors." *Id.* at 371. That does not describe what Plaintiffs seek here.

---

[1] Apparently Mr Yurwitz testified at least to some extent about his work on the 2002 transaction, although Abbott's objections to his testimony are the subject of another part of Plaintiffs' motion.

On the other hand, not every aspect of every proposed transaction is relevant to this case, only any consideration of the impact of benefits and of factors that affect the cost of benefits, such as the age of the workforce, as well as enough information about the nature of the proposed transaction to make a comparison to the HPD spin off meaningful. Limiting discovery to information relating to those topics will limit the burden of production on Abbott.

Likewise Abbott's identification of May 2003 as the starting point for such discovery is also too limited. That is the date of documents prepared by Abbott's outside financial advisors comparing the HPD spin off to the other six transactions. (Abbott's Opp'n, Ex. 3, filed under seal.) It is reasonable to assume that Abbott's management had been discussing those proposed transactions and perhaps other possibilities for some time before outside financial advisors were brought in. Similarly, it is likely that the factors that would be considered in making decisions about possible transactions were identified earlier than the discussion of a specific unit. Plaintiffs have the right to learn whether the impact of benefits was one of those factors.

On the other hand, it does not appear that transactions that were not at least on the horizon at the time the HPD decision was made could have figured in that decision. At the argument on their motion, Plaintiffs' counsel suggested that having information about proposed transactions that arose after the HPD decision was announced might allow Plaintiffs to show a pattern of eliminating divisions with costly benefit obligations, although counsel acknowledged that such a pattern would be demonstrated only by proposed divestitures, not proposed acquisitions. In light of the burden that is being imposed on Abbott by expanding discovery, the court concludes that at this time discovery should cover all proposed transactions (not just the six expressly compared) for the two year period before the HPD transaction, that is, from June 1, 2001 through August 30, 2003, without prejudice

to Plaintiffs seeking discovery relating to possible divestitures after August 2003, if there is a basis to believe that such discovery might lead to admissible evidence of such a pattern. The end date of August 30, 2003 is only for other proposed transactions. It does not limit discovery of information that refers to or discusses the HPD spin off.

Abbott suggests that disclosing information regarding transactions it may have contemplated or may still be contemplating "raise[s] issues under the securities laws." (Abbott's Opp'n at 7) At oral argument on the motion, Abbott's counsel stated that its argument relates to regulations regarding a publicly-held company disclosing non-public information. Counsel was not able to point to any authority indicating that those regulations prohibit discovery in a lawsuit under a protective order that precludes the use of the information for any purpose other than this litigation. Abbott's concern in this respect is mitigated by limiting the discovery about other transactions as set out in the preceding paragraph.

That leads to a further consideration. The strenuousness of Abbott's objection to discovery regarding its proposed transactions is in part attributable to the very sensitive nature of that information. Abbott is justifiably concerned that it could be harmed if highly sensitive business information of the type that Plaintiffs seek is disclosed publicly, even inadvertently. If Abbott believes that the current protective order should be modified in light of this ruling, it may so move, following a conference pursuant to Local Rule 37.2.

The particular disputes are considered in light of the foregoing.

# THE DISCOVERY AT ISSUE

**Plaintiffs' First Requests (served December 2004).**

<u>Abbott's Responses and Supplemental Responses to Plaintiffs' First Set of Interrogatories</u> (Pls.' Mot., Ex. 4)

*Interrogatories 1, 3, 4, 6, 10, and 11.* Plaintiffs ask Abbott to provide information about meetings at which the following topics were discussed: the decision to spin off HPD; the level of employee benefits to be provided to Hospira employees; a prohibition on transferring between Abbott and the new company; whether to provide medical benefits to Hospira retirees; agreements regarding employee benefits between Abbott and Hospira; and (after January 1, 2003) gains or losses resulting from benefit curtailments. Abbott's answers to each, except Interrogatory 11, state that Abbott has been unable to identify all meetings that may be responsive to this Interrogatory. Abbott refers Plaintiffs to documents, stating that the burden of deriving the information would be the same for Plaintiffs as for Abbott, essentially invoking Fed. R. Civ. P. 33(d).

Abbott's Opposition to the motion states that Abbot has made inquiry of various individuals regarding their recollection of meetings that might have been held, and that no individual has any comprehensive recollection of all the information sought. (Abbott's Opp'n at 8.) Abbott states that, in the absence of any "precise or comprehensive recollection," it invoked Rule 33(d). (*Id.*)

Abbott's answer to those interrogatories is insufficient. As its Opposition discloses, Abbott has access to more information than is disclosed in the documents. Abbott has access to individuals who participated in the meetings. Although no single one of those individuals may have a "precise or comprehensive recollection," that does not excuse Abbott's responsibility to disclose what information they do have, even if it is limited. Furthermore, there may have been meetings or

7

discussions that are not described in the documents. In answering an interrogatory, a party must provide *all* information reasonably available to it, which Abbott has not done. *See* Advisory Committee Notes, 1993 Amendments to Rule 33(b), emphasizing "the duty of the responding party to provide full answers to the extent not objectionable." Plaintiffs' motion is granted as to these interrogatories. Furthermore, the answer to Interrogatory 12 must be supplemented if the current answer is no longer sufficient after the other interrogatories have been answered.

Abbott's First Response to Plaintiffs' Request for Production of Documents (Pl.'s Mot., Ex. 2)

*Document request 3(n).* Plaintiffs seek any analysis or summaries of any estimates of the costs to Abbott or Hospira of providing employee pension and retiree medical benefits to all Abbott or Hospira employees or a particular group of them, on or after June 1, 2001.[2] Abbott says that it will produce "any responsive information that relates to the HPD spin off" but not those "subject to unrelated transactions." (Abbott's Opp'n. at 9, n.4.) Plaintiffs' motion to compel a further response is granted. Any such analyses performed with respect to other proposed transactions might provide information about what factors were important to Abbott in such decisions and about the relative savings Abbott might effectuate by spinning off HPD as compared to another possible transaction about another unit.

*Document request 11.* Abbot objects to this request in which Plaintiffs seek "documents containing, discussing or relating to the term 'Long Range Plan,'" which was referred to in a brochure distributed by Abbott to its employees in June 2003 when certain benefit changes were

---

[2]Plaintiffs originally requested January 1, 2000 in their discovery, but at oral argument Plaintiffs' counsel confirmed that they agreed to limit the time period to June 1, 2001.

8

announced. (Abbott's Opp'n at 9; Pls.' Mot. at 4.) Plaintiffs argue that they want documents relating to the "Long Range Plan" that was to extend through 2007, in order to determine the extent to which benefit reductions were part of that Long Range Plan. (Pl.'s Mot. at 4.) The request as served is clearly too broad and burdensome, but Plaintiffs do not propose a narrower alternative. The motion to compel is denied without prejudice to Plaintiffs serving a more narrowly tailored request that focuses on issues relevant to this case.

*Document Request 12.* Plaintiffs seek "all documents relating to any decision or methods of selection by Abbott's mangers, officers, or directors, . . . to take action or to not take action to terminate or spin-off most of the employees of HPD or any other business unit." (Pls.' Mot., Ex. 2.) The request then enumerates three particular categories of analyses prepared by employees of Abbott or by outside firms, actuaries or consultants: (a) describing the effect of the decision on the cost of providing benefits under Abbott's employee benefit plan; (b) describing the effect of the decision on expected employee attrition and retirement rates; and (c) describing any expected curtailment gain or settlement gain on Abbott's financial statement as a result of the decision. The motion is granted as follows: Abbott is required to produce the documents in subcategories (a), (b) and (c) for all proposed transactions (not just the six expressly compared) for the two year period before the HPD transaction, that is, from June 1, 2001 through August 30, 2003.

*Document Request 14.* Plaintiffs seek documents related to any expected decision to freeze pension accruals after 2004 and to eliminate retiree medical benefits after the spin off. Abbott says that it has produced all responsive documents in its possession, custody or control. *See* Abbott's Opp'n at 10. The motion is apparently moot with respect to this request.

*Document Requests 15-16 and 22-23.* Plaintiffs' motion is denied as premature with respect to this request. Abbott states that it will produce responsive documents (Abbott's Opp'n at 10), and there is nothing in the record to suggest that Abbott will not do so. The parties should meet and confer regarding a schedule for such production.

*Document Request 24.*[3] Plaintiffs seek documents "related to or presented at" the meetings identified in Interrogatories 1, 3, 4, 6, 10 and 11. Abbott does not appear to have responded to that request, but suggests in its Opposition that its response to those interrogatories is its response to this request. (Abbott's Opp'n at 8 n.3.) The motion is granted, and Abbott must respond to Request 24 formally, including producing any additional documents required by its supplemental answers to the interrogatories. However, the term "related to" is vague and overbroad in this context. The request is limited to the following: notices or agendas for such meetings; documents presented or distributed at or in preparation for such meetings; and any summaries or notes of such meetings.

**Plaintiffs' Second Requests (served May 2005).**

<u>Abbott's Responses and Objections to Plaintiffs' Second Discovery Request</u> (Pls.' Mot., Ex. 11)

As part of its Second Set of Requests, Plaintiffs served three interrogatories and two document requests regarding an article about Abbott that appeared in the April 18, 2005 edition of *Crains Chicago Business*. (Pls.' Mot. at 6.) The article cited "Abbott executives" as the source of information about Abbott's plan to acquire some businesses and spin off others, including Hospira. (*Id.*) Abbott objects to each such interrogatory and request as not relevant and as duplicative of

---

[3] Request 24 does not appear in Exhibit 2 because Abbott apparently did not respond to it. The request is found in Plaintiffs' Exhibit 1 at 14.

10

Plaintiffs' other requests. Abbott's Opposition does not discuss Plaintiffs' Second Request. At the argument on the motion, Plaintiffs' counsel acknowledged that these requests and interrogatories did not seek more than Plaintiffs' previous discovery. These requests were apparently an additional angle to getting the same information. In light of this order granting in part Plaintiffs' other discovery requests, the motion to compel responses to these requests is moot.

**Plaintiffs' Third Requests (served November 2005).**

Abbott's Second Supplemental Response to Plaintiffs' Third Discovery Request (Pls.' Mot., Ex. 15)

*Document Request 8.* Plaintiffs seek all advertisements or solicitations for employees to work at Abbott during the relevant period. In response, Abbott produced approximately 600 pages, Bates numbered A 10343-10940. (Pls.' Mot. at 7.) According to Plaintiffs, those included internally-generated spreadsheets, which Plaintiffs complain bear columns of unidentified data, with no explanatory key or description. (*Id.*) Abbott argues that Plaintiffs have not satisfied their obligation to meet and confer regarding this request, and that it has produced records "reflecting job requisitions that were submitted for posting during the relevant time period." (Abbott's Opp'n at 11.) At oral argument, Abbott's counsel agreed to provide Plaintiffs' counsel, on request, with a full description of any truncated words on the spreadsheets, which is what Plaintiffs' counsel said was needed. This exchange illustrates why the court must insist on compliance with Local Rule 37.2's requirement of a personal discussion between counsel before a discovery motion is filed.

Abbott's Response to Plaintiffs' Third Discovery Request (Pls.' Mot., Ex. 13)

*Document Requests 10 and 11.* Plaintiffs seek documents relating to benefits that were provided to Hospira executives who were former Abbott employees. Abbott objects on the ground of relevance. (Abbott's Opp'n at 11.) Plaintiffs argue, that decisionmakers who went to Hospira might have been motivated to agree to the spin off by being promised better compensation than other HPD employees received when they went to Hospira. (Pls.' Mot. at 8.) Abbott responds that none of the Hospira executives were involved in the decision to spin off HPD. (Abbott's Opp'n at 11.) The court finds that the request as drafted is overly broad. The motion is denied with respect to these requests without prejudice to Plaintiffs serving a more narrowly-tailored request as to a particular Hospira executive if there is any basis to support Plaintiffs' belief that the particular executive was involved in the decisions about which Plaintiffs complain.

*Document Request 12.* Plaintiffs seek documents relating to Abbott's consideration of closing any plants or work location from June 2001 to the time of the HPD spin off. (Pls.' Mot. at 8.) For the reasons set out above, the motion is granted, limited to documents that reflect or discuss any consideration of the impact of benefits and factors that affect the cost of benefits, such as the age of the workforce.

*Document Request 13.* Plaintiffs seek documents in which Abbott or its consultants analyzed Abbott's future funding contributions to the pension plan between January 2000 and January 2004. According to Plaintiffs, Abbott has produced only year-end planning documents or annual statements produced by Hewitt Associates for the years 2002 to 2004. (Pls.' Mot. at 9.) Plaintiffs' motion suggests a belief that Abbott is not producing internal deliberations about its future pension

obligations. (*Id.*) Abbott states that the Hewitt documents are the only analyses responsive to this request, and that Abbott will produce such internal documents. (Abbott's Opp'n at 12.)

To avoid any uncertainty, Plaintiffs' motion is granted as to this request, for the period of June 2001 through 2004. The documents, whether prepared by outside consultants or internally, are undoubtedly within the scope of discovery. As discussed above, Abbott's consideration of whether organizational changes should be made can reasonably be assumed to have begun sometime before May 2003.

**Abbott's Objection during Yurwitz Deposition.**

Plaintiffs complain that during Mr. Yurwitz' deposition, Abbott's counsel objected to questions about the nature of other proposed transactions for which he provided consulting services. (Pls.' Mot. at 9-10.) Abbott does not deny that it limited Mr. Yurwitz testimony based on its objections to the scope of Plaintiffs' proposed discovery. (Abbott's Opp'n at 13.)

Rule 30 is explicit: "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)." Fed. R. Civ. P. 30(d)(1). None of those situations apply to Mr. Yurwitz' testimony. Under Rule 30, testimony is to be taken subject to the objection, unless a party or the witness moves pursuant to Rule 30(d)(4). Abbott did not so move, and, accordingly, limiting the testimony was improper.

It is not clear whether any relief is appropriate at this time, because Mr. Yurwitz' deposition may have to be resumed after Abbott provides additional information required by this order. Accordingly, the motion is denied at this time without prejudice.

**Redacted Documents.**

Plaintiffs complain that Abbott "liberally" redacted produced documents to delete information that Abbott contends is "non-responsive." (Pls.' Mot. at 10.) Abbott points out that non-responsive information need not be produced. (Abbott's Opp'n at 13.) Plaintiffs' real concern is that information has been redacted that is truly responsive, and that the redactions delete meaningful context for the information that is provided. However, Plaintiffs' proposed relief, that the court order production of complete versions of all documents, is not necessary. Plaintiffs' alternative request, that the court review *in camera* all of the redacted documents on the possibility that something responsive might have been redacted, is on its face completely impractical. Plaintiffs' motion is denied without prejudice to Plaintiffs bringing a further motion relating to specific documents, but only after a personal conference pursuant to Local Rule 37.2 with Abbott's counsel regarding the specific documents and redactions Plaintiffs dispute.

**Hospira Documents H 03254-59 and H 03393.**

Hospira requested that Plaintiffs return two documents that it claims were attorney-client privileged and work product protected, but inadvertently produced. (Pls.' Mot. at 12.) Abbott then asserted its own claim of privilege over the documents. (*Id.*) This part of Plaintiffs' motion raises a number of issues: whether the documents are, in fact, deserving of privilege or protection; whether any such protection or privilege was waived; and whether Abbott has standing to assert any privilege over those documents. Importantly, Hospira has an interest here that it is entitled to protect. It is not apparent that there has ever been a Local Rule 37.2 conference on this issue

14

involving counsel for all the parties. Accordingly, the present motion is denied, without prejudice to Plaintiffs renewing the motion after a personal conference among counsel for all parties.

**Abbott Documents A 4850-52 and A4853-58.**

Plaintiffs also complain that Abbott improperly asserted attorney-work product protection and attorney-client privilege over two documents that were prepared by Hewitt. (Pls.' Mot. at 13.) Abbott states that Plaintiffs failed to confer with Abbott's counsel about the documents before bringing the motion, and that it is reviewing its position. (Abbott's Opp'n at 15.) At the oral argument, Abbott's counsel advised that Abbott is withdrawing its claim of privilege with respect to these documents and will produce them. Accordingly, the motion as to these documents is denied as moot.

## CONCLUSION

Plaintiffs' motion raised certain genuine disputes about the scope of discovery over which the parties sincerely differed. It also raised some purported disputes as to which there had been little or no discussion among counsel before the motion was brought. It is the obligation of counsel to narrow and focus discovery disputes before they are brought to the court. The court will not hear any further discovery motions not accompanied by a certification pursuant to Local Rule 37.2, identifying the date and time of the personal consultation among counsel as to that specific dispute.

For the foregoing reasons, Plaintiffs' Motion to Compel is granted in part and denied in part.

IT IS SO ORDERED.

Geraldine Soat Brown
United States Magistrate Judge

April 12, 2006